IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MT. VERNON FOOD & DELI, INC., D/B/A STEVE'S FOODMART & DELI,**<br>  Plaintiff,<br>  v.<br>**UNITED STATES OF AMERICA,** *et al.*,<br>  Defendants. | **Case No. 2:14-cv-2325**<br>**Judge Peter C. Economus**<br>**ORDER AND OPINION** |

Plaintiff Mt. Vernon Food & Deli, Inc., d/b/a Steve's Foodmart and Deli ("Steve's Foodmart") brought this case challenging an administrative decision by the United States Department of Agriculture Food and Nutrition Service ("FNS") withdrawing Steve's Foodmart's authorization to participate in the Supplemental Nutrition Assistance Program ("SNAP"). This matter is before the Court for consideration of Plaintiff's Motion for Stay of Administrative Determination (Dkt. 3), on which this Court held a hearing on December 15, 2014. For the reasons that follow, Plaintiff's motion is **DENIED**.

I.     **Administrative Background**

Steve's Foodmart was previously owned by Ahmad Rawahneh ("Ahmad") and Atef Alrawahneh ("Atef"), and is still owned by Ahmad. (A.R. 69, Doc. 7-1 at 72.)

Prior to owning Steve's Foodmart, Ahmad and Atef owned H&R Foods, Inc., d/b/a A&M Market ("A&M Market"). (A.R. 69–70, Doc. 7-1 at 72–73.) On November 25, 1998, FNS sent a charging letter to Ahmad as President of A&M Market, charging that store with a number of food stamp violations, including trafficking food stamps for cash. (Compl. Ex. F, Doc. 2-1 at 15.) On January 11, 1999, A&M Market was permanently disqualified from the SNAP, pursuant to Section 278.6(a) of the Food Stamp Program Regulations. (*Id.* at 13.)

On June 3, 2003, Atef submitted an application for Food Stamp authorization for Steve's Foodmart (A.R. 13), which was granted on July 2, 2003 (Compl. Ex. C, Doc. 2-1 at 6). FNS asserts that this authorization was inadvertent. (Doc. 9 at 6; A.R. 138, Doc. 7-1 at 141.)

On July 3, 2013, FNS notified Steve's Foodmart that its location was due for reauthorization and requested certain information and documentation. (A.R. 16, Doc. 7-1 at 19.) In response, Ahmed submitted an affidavit (the "2013 Affidavit") in which he certified that no persons "who were owners or managers of any store that has been permanently disqualified from SNAP . . . [were] financially involved or have other operational interest" in Steve's Foodmart. (*Id.* at 21.) However, the 2013 Affidavit also includes a narrative that explains the circumstances of A&M Market's permanent disqualification. (*Id.* at 22.)

On October 30, 2013, FNS sent a letter (the "2013 Decision") to Ahmed stating the following:

> This is to notify you that your authorization to participate as [a] retail food store within . . . [SNAP] is permanently withdrawn**.**
>
> It is the determination of the . . . [FNS] that your application submitted by you on behalf of Steve's Foodmart & Deli . . . constituted an attempt to avoid or circumvent the permanent withdrawal of you and your partner, Atef Mohammad Alrawahneh at A & M Market. You both were permanently withdrawn from SNAP at A & M Market . . . effective January 13, 1999 due to business integrity and therefore were ineligible to apply at the location listed above.
>
> In accordance with **Sections 278.1(l)(iv)** of the SNAP regulations your application is withdrawn. The withdrawal shall be effective permanently in accordance with **278.1(k)(3)** of the SNAP regulations.

(A.R. 70, Doc. 7-1 at 73 (emphasis omitted, emphasis added).)

Following an administrative appeal, FNS issued its final decision ("2014 Decision") on October 15, 2014, upholding the 2013 Decision permanently withdrawing Steve's Foodmart's

2

authorization to participate in the SNAP. (Compl. Ex. H, Doc. 2-1 at 27; A.R. 137–48, Doc. 7-1 at 140–151.) In the 2014 Decision, FNS made factual findings, cited 7 CFR §§ 278.1(l)(1)(iv)[1] and 278.6(e)(1)(iii)), and responded to several arguments.

The 2014 Decision noted that "FNS <u>inadvertently</u> approved [the Appellants] for participation in the SNAP as owners of Steve's Foodmart even though [they] had informed FNS that they had been permanently disqualified from the SNAP in 1999 for trafficking as owners of A & M Market." (A.R. 144, Doc. 7-1 at 147 (emphasis in original).) "In 2013, Steve's Foodmart was included in FNS' High Risk Reauthorization pool and, therefore, was required to submit high risk documentation for reauthorization purposes." (*Id.*) FNS found that such documentation confirmed that Steve's Foodmart was purchased by the Appellants and incorporated after the effective date of A & M Market's permanent disqualification. (*Id.*) Also included in the high risk documentation was the 2013 Affidavit, containing what FNS determined to be false information: a statement that "no persons who were owners or managers of any store that has been permanently disqualified from the SNAP or WIC are financially involved or have other operational interest in this store." (*Id.*)

The 2014 Decision first cited 7 CFR § 278.1(l)(1)(iv), which provides that FNS shall withdraw a firm's Food Stamp authorization if "[t]he firm fails to maintain the necessary business integrity to further the purposes of the program, as specified in <u>paragraph (b)(3)</u> . . . Such firms shall be withdrawn . . . for periods of time in accordance with those stipulated in <u>paragraph (k)(3)</u> . . . for specific business integrity findings." 7 CFR § 278.1(l)(1)(iv) (emphasis added).

---

[1] The decision actually cites 7 CFR §278.1(l)(iv), which the Court assumes is a typographical error.

Paragraph (b)(3) lists several types of information that may demonstrate a lack of business integrity requiring denial of authorization:

- Paragraph (b)(3)(iii) provides that "FNS shall deny the authorization of any firm . . . based on consideration of . . . [e]vidence of an attempt by the firm to circumvent a period of disqualification . . . imposed for violations of the Food Stamp Act and program regulations." 7 CFR §278.1(b)(3)(iii).

- Paragraph (b)(3)(iv) provides that "FNS shall deny the authorization of any firm . . . based on consideration of . . . [p]revious Food Stamp Program violations administratively and/or judicially established as having been committed by owners, officers, or managers of the firm for which a sanction had not been previously imposed and satisfied." 7 CFR §278.1(b)(3)(iv).

- Paragraph (b)(3)(vi) provides that "FNS shall deny the authorization of any firm . . . based on consideration of . . . [c]omission of any other offense indicating a lack of business integrity or business honesty of owners, officers or managers of the firm that seriously and directly affects the present responsibility of a person." 7 CFR §278.1(b)(3)(vi).

Paragraph (k)(3) provides different periods of time for denial of authorization based on specific findings relating to business integrity:

- Paragraph 278.1(k)(3)(iii) provides that "[f]irms for which evidence exists of an attempt to circumvent a period of disqualification . . . shall be denied for a period of three years from the effective date of denial." 7 CFR §278.1(k)(3)(iii).

- Paragraph 278.1(k)(3)(iv) provides that "[f]irms for which evidence exists of prior Food Stamp Program violations by owners, officers, or managers of the firm for which a sanction had not been previously imposed and satisfied shall be denied for a period of time equivalent to the appropriate disqualification period for such previous violations, effective from the date of denial." 7 CFR §278.1(k)(3)(iv).

- Paragraph 278.1(k)(3)(vi) provides that "[f]irms for which any other evidence exists which reflects negatively on the business integrity or business honesty of the owners, officers or managers of the firm as specified in § 278.1(b)(3)(vi) shall be denied for a period of one year from the effective date of denial." 7 CFR §278.1(k)(3)(vi).

Citing 7 CFR § 278.1(l)(1)(iv), FNS stated in the 2014 Decision that "[t]he Appellants were ineligible to participate in the SNAP when they applied . . . in 2003 due to the fact that they were serving a permanent disqualification as owners of [A & M Market]." (A.R. 144–45, Doc. 7-

1 at 147–8.) "The Appellants are/were <u>attempting to avoid or circumvent the permanent disqualification</u> of their store A & M Market by purchasing and managing a replacement store (i.e., Steve's Foodmart is a replacement store for the permanently disqualified store A & M Market)." (*Id.* (emphasis added).)

Based on the above language, it appears that both the 2013 Decision and the 2014 Decision implicitly rely on 7 CFR § 278.1(b)(3)(iii), which provides for denial of authorization based on "[e]vidence of an attempt by the firm to circumvent a period of disqualification." The period of disqualification for this reason, however, is <u>three years</u>, as set forth in 7 CFR § 278.1(k)(3)(iii).

Rather than citing the provision on attempting to circumvent disqualification, 7 CFR § 278.1(b)(3)(iii), FNS instead cited 7 CFR § 278.1(k)(3)(iv), which provides that "[f]irms for which evidence exists of prior Food Stamp Program violations <u>by owners, officers, or managers</u> of the firm <u>for which a sanction had not been previously imposed and satisfied</u> shall be denied for a period of time equivalent to the appropriate disqualification period for such previous violations, effective from the date of denial." 7 CFR §278.1(k)(3)(iv) (emphasis added). FNS argued that, pursuant to this provision:

> the Appellants shall be permanently withdrawn from participating in the SNAP as owners of Steve's Foodmart as this is the proper "period of time equivalent to the appropriate disqualification period for such previous violations" (i.e., the Appellants were permanently disqualified from participating as authorized retailers in the SNAP in 1999 as owners of A & M Market).

(A.R. 139, Doc. 7-1 at 142.) In the absence of briefing on the issue, the Court finds that it is unclear whether FNS properly applied § 278.1(k)(3)(iv).

Secondly, the 2014 Decision cited 7 CFR § 278.6(e)(1)(iii), a regulation which was not cited in the 2013 Decision, and which provides that FNS shall "[d]isqualify a firm permanently if

5

. . . [i]t is determined that personnel of the firm knowingly submitted information on the application that contains false information of a substantive nature that could affect the eligibility of the firm for authorization in the program." The 2014 Decision states:

> FNS determined that the Appellants shall be permanently withdrawn/denied from participation as authorized retailers . . . for making a false statement on the . . . [2013 Affidavit]. . . . The . . . decision to permanently withdraw the Appellants on behalf of Steve's Foodmart from participation in the SNAP is substantiated, per [§ 278.6(e)(1)(iii)], based on consideration of information regarding the business integrity and reputation of the Appellants as there is evidence of an attempt by the Appellants to circumvent a period of disqualification . . .

(A.R. 145, Doc. 7-1 at 148.)

The 2014 Decision also rejected Plaintiff's arguments regarding Plaintiff's 10 year history of SNAP participation without incident (A.R. 145, Doc. 7-1 at 148), Ahmad and Atef's lack of personal involvement in the violations at A&M Market (*id.*), staff training and other actions at Steve's Foodmart's to prevent SNAP violations (*id.* at 149), and economic hardship (*id.*). Responding to Appellants' alternative request for a three year SNAP withdrawal, FNS simply restated its regulatory findings summarized above. (A.R. 147, Doc. 7-1 at 150.)

## II. Plaintiff's Complaint and Motion to Stay

On November 7, 2014, Plaintiff filed this case in the Franklin County Court of Common Pleas, and Defendant United States removed it to this Court on November 18, 2014. (Dkt. 1.) Plaintiff may obtain judicial review pursuant to 7 C.F.R. § 279.7, which provides that, "[e]xcept for firms disqualified from the program in accordance with § 278.6(e)(8) of this chapter, a firm aggrieved by the determination of the designated reviewer may obtain judicial review of the determination by filing a complaint against the United States in the U.S. district court . . ."

Plaintiff alleges that the 2014 Decision relies on facts and regulations "that were totally different from those cited in the" 2013 Decision, and that reliance "deprived the Plaintiff of a

6

meaning[ful] review of the . . . [2013 Decision] in that the Plaintiff[] obviously was not able to address the legal basis relied upon . . . [in the 2014 Decision] but NEVER relied upon as a basis for the" 2013 Decision. (Compl. ¶¶ 29, 31.) It also alleges that "[t]he facts and legal arguments relied upon by FNS do not support let alone require the Permanent withdrawal of Plaintiff as a licensed SNAP firm." (*Id.* at ¶ 32.)

Plaintiff seeks a stay of FNS' decision pursuant to 7 C.F.R. § 279.7(d), which provides:

> During the pendency of any judicial review, . . . the administrative action under review shall remain in force unless the firm makes a timely application to the court and after hearing thereon, the court stays the administrative action after a showing that irreparable injury will occur absent a stay and that the firm is likely to prevail on the merits of the case. However, permanent disqualification actions taken in accordance with § 278.6(e)(1) of this chapter shall not be subject to such a stay of administrative action.

7 CFR 279.7(d). In its motion for a stay, Plaintiff elaborates on its complaint and asserts that it will suffer substantial economic hardship in the absence of a stay. (Doc. 3.)

### A. Exception in § 279.7(d)

The Government argues that this case falls into the exception in 7 C.F.R. § 279.7(d), which provides that "permanent disqualification actions taken in accordance with § 278.6(e)(1) of this chapter shall not be subject to such a stay of administrative action." 7 CFR 279.7(d). The Government asserts that "[t]his matter is based upon permanent withdrawal of authorization pursuant to 7 C.F.R. § 278.6(e)(1)," and that "[t]his case involves the permanent disqualification of Steve's Foodmart." (Doc. 9 at 8.)

According to the plain language of § 279.7(d), the exception applies specifically to "permanent disqualification actions taken in accordance with § 278.6(e)(1)," not the broader set of all cases "involving" permanent disqualification, as the Government apparently suggests. The

Government's cited cases are consistent with this finding. Therefore, the Court must determine whether this is a "permanent disqualification action[] taken in accordance with § 278.6(e)(1)."

The Court finds that the 2014 Decision is less than clear regarding its reliance on specific regulations, and particularly unclear regarding its reliance on § 278.6(e)(1)(iii), which was not cited in the 2013 Decision. As set forth above, the 2014 Decision states:

> FNS determined that the Appellants shall be permanently withdrawn/denied . . . for making a false statement on the . . . [2013 Affidavit]. . . . The . . . decision to permanently withdraw the Appellants . . . is substantiated, per [§ 278.6(e)(1)(iii)], based on consideration of information regarding the business integrity and reputation of the Appellants as there is evidence of an attempt by the Appellants to circumvent a period of disqualification . . .

(A.R. 145, Doc. 7-1 at 148.) Moreover, both the 2013 and 2014 Decisions characterize the agency action as "withdrawing," rather than "disqualifying," the Appellants. Finally, 7 C.F.R. § 278.6(c) provides:

> In the case of a firm subject to permanent disqualification under paragraph (e)(1) of this section, the determination shall inform such a firm that action to permanently disqualify the firm shall be effective immediately upon the date of receipt of the notice of determination from FNS, regardless of whether a request for review is filed in accordance with part 279 of this chapter.

The parties agree that FNS granted a temporary stay of its decision, inconsistent with a finding that this is a permanent disqualification action taken in accordance with § 278.6(e)(1).

Considering the language of the 2014 Decision as well as the context of the agency-granted temporary stay, the Court finds that this is not a "permanent disqualification action[] taken in accordance with § 278.6(e)(1)." Section 279.7(d) therefore authorizes a stay if Plaintiff can show irreparable injury and likelihood of success on the merits. Because the parties agree that Plaintiff would suffer irreparable injury in the absence of a stay, the Court must address only whether Plaintiff has demonstrated likelihood of success on the merits.

**B.     Likelihood of Success on the Merits**

As stated above, Plaintiff makes two claims: (1) the 2014 Decision relied on facts and regulations different from those cited in the 2013 Decision, depriving the Plaintiff of the opportunity to address the legal basis of the 2014 Decision (Compl. ¶¶ 29, 31); and (2) the facts and law do not support Plaintiff's permanent withdrawal or disqualification. (*Id.* at ¶ 32.) On the first claim, the Court agrees with Plaintiff that the 2014 Decision lacks clarity and cites a basis not mentioned in the 2013 Decision. However, it is Plaintiff's second claim that truly relates to the merits, and Plaintiff has not demonstrated that it is likely to prevail as to whether the facts and law support disqualification.

*1.     A&M Market Disqualification Extended to Owners*

Plaintiff's primary argument is that an "innocent owner" of a previously disqualified store is not personally disqualified from participating in the SNAP. The law is clear, however, that an owner's personal innocence does not protect him or her from disqualification. In *Bakal Bros. v. United States*, the Sixth Circuit concluded that 7 U.S.C. § 2021(b) "permits the permanent disqualification of an innocent owner from the food stamp program," and noted that "Congress has made clear that innocent store owners should be held responsible for the independent, unauthorized acts of store personnel." 105 F.3d 1085, 1089, 1090 (6th Cir. 1997).

While the law could be clearer as to whether a store's disqualification <u>automatically</u> extends to its owners, the Court finds that Plaintiff has not demonstrated a likelihood of success on this issue. The statute authorizing disqualification of stores, 7 U.S.C. § 2021(e)(1), provides that, when an owner of a disqualified store transfers ownership of that store, "[t]he disqualification period . . . shall continue in effect as to the person or persons who sell or otherwise transfer ownership of the retail food store . . ." 7 U.S.C. § 2021(e)(1). According to the 2013 Affidavit, A&M Market closed in February 2001. While it is unclear whether Ahmad and

9

Atef transferred ownership of that business, the Court finds that the statutory intent reflected in § 2021(e)(1) is that the business's disqualification would continue in effect as to Ahmad and Atef.

Several cases lend support to this finding. In *United States v. Smith*, the Fifth Circuit held "that the term 'retail food store' in the . . . [food stamp program statutes and regulations] means the owner and operator of a firm doing a retail food business in a building at a designated location, whether the owner is . . . a corporation, or some other legal entity." 572 F.2d 1089, 1095 (5th Cir. 1978). In *Abdelaziz v. U.S., Through Dep't of Agric.*, the Second Circuit states:

> Although [FNS' letter brief] refers to an "FNS policy to permanently disqualify the owners of stores who traffic in food stamps," the reference lacks any citation to legal authority. Later, the letter brief states, "The agency ... has construed 'retail food store' to include the management of the enterprise committing the violation." This statement also lacks any citation to legal authority except for a footnote stating enigmatically that the FNS' interpretation is "reflected" in agency regulations that use the undefined word "firm" as well as the statutory language "retail food store" and "wholesale food concern." Lacking clear guidance, we decline to adopt a broad rule concerning the disqualification of owners of stores that unlawfully traffic in food stamps. Instead, we rely on the established principle that <u>the corporate form should be disregarded "where it is interposed to defeat legislative policies</u>."

837 F.2d 95, 98 (2d Cir. 1988) (emphasis added). In *Kim v. United States*, the Ninth Circuit stated, "we must join our unanimous sister circuits in holding that 7 U.S.C. § 2021(b) allows the FCS to disqualify even innocent owners permanently from participation in the Food Stamp Program for trafficking violations," and finding that "[p]ermanently disqualifying innocent store owners who lack an effective program or policy to prevent trafficking violations . . . promot[es] adoption of such effective programs or policies." 121 F.3d 1269, 1273–74 (9th Cir. 1997).

At the hearing, Plaintiff's counsel asserted that a contrary regulatory intent is expressed in 7 C.F.R. 278.6(f)(2), which provides:

> In the event any retail food store . . . which has been disqualified is sold or the ownership thereof is otherwise transferred . . ., the person . . . who sells or otherwise transfers ownership . . . shall be subjected to and liable for a civil money penalty . . . If the retail food store or wholesale food concern has been permanently disqualified, the civil money penalty shall be double the penalty for a ten year disqualification period. The disqualification shall continue in effect <u>at the disqualified location for the person</u> . . . who transfers ownership of the retail food store or wholesale food concern notwithstanding the imposition of a civil money penalty under this paragraph.

7 C.F.R. 278.6(f)(2) (emphasis added). Because § 278.6(f)(2) specifically provides for the owner's continuing disqualification "at the disqualified location," Plaintiff argues that the owner is not specifically disqualified at other locations. The Court finds, however, that such an interpretation is inconsistent with 7 U.S.C. § 2021(e)(1).

### 2. *Equitable estoppel*

Plaintiff also appears to raise an equitable estoppel claim based on FNS' 2003 authorization of Steve's Foodmart. Any such claim fails, however, because Plaintiff has not alleged affirmative misconduct:

> Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases. The elements of an estoppel claim are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel. However, the government may not be estopped on the same terms as any other litigant. <u>A party attempting to estop the government bears a very heavy burden</u>. At a minimum, Plaintiff must show some "<u>affirmative misconduct</u>" by the government in addition to establishing the other elements of estoppel. Affirmative conduct is more than mere negligence. It is an act by the government that either <u>intentionally or recklessly misleads the claimant</u>.

11

*Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010) (citing and quoting *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004); *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60 (1984); *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001).) (internal citations and quotation marks omitted) (emphasis added).

### III.    Conclusion

For the reasons set forth above, Plaintiff's motion (Doc. 3) is **DENIED**, and the temporary stay granted by the Court on December 15, 2014, is hereby **LIFTED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE